J. L. Rasberry and C. W. Croom, both of El Paso, for appellants.

R. J. Channell, of El Paso, for appellees.

**AMERICAN TRUST & SAVINGS BANK et al.
v. COTTON FINANCE & TRADING CORPORATION et al. (No. 2175.)**

Court of Civil Appeals of Texas. El Paso.
Sept. 20, 1928.

Rehearing Denied Oct. 25, 1928.

HIGGINS, J. This suit was brought by the American Trust & Savings Bank against the Cotton Finance & Trading Corporation and others, not necessary to mention, to recover damages for the alleged conversion of certain cotton grown in the year 1925 upon a farm in Dona Ana county, New Mexico, known as the Will McNary place. It was asserted by the plaintiff that it had a lien upon the cotton by virtue of a mortgage in its favor, dated January 30, 1925, executed by H. H. Brunson and wife. J. A. Brennan intervened, and sought to recover like damages, claiming under a mortgage executed by Brunson, dated November 10, 1923, covering a half interest in the crop grown upon said place in 1924 and all succeeding years. Upon trial without a jury, judgment was rendered, denying plaintiff and intervener the relief they sought.

Judges Mecham and Young, of New Mexico, testified that in their opinion the mortgages in question were invalid under the law of that state. They further testified that the Supreme Court of New Mexico had not passed upon the question; that the common law prevailed in that state, unless changed by statute. Error is assigned to the admission of such opinion evidence, and to the action of the court in treating the question of the validity of the mortgages as one of fact and finding in accordance with the opinions mentioned. It is contended, since the validity of such mortgages had not been passed upon by the New Mexico court, the question was one of law rather than of fact; that the

statutory law of New Mexico did not invalidate the mortgages, and they were valid at common law.

■ We need not pause to consider whether the question is one of law or of fact, for, assuming it to be of the former nature, we think, under the statute of New Mexico, enacted in 1915, mortgages upon unplanted crops were invalid, and since the crop of 1925 was not planted until subsequent to January 30, 1925, the asserted mortgages were invalid. This conclusion is reached independent of the New Mexico act of 1927 (Acts of 1927, c. 24), relating to such mortgages, to the admission in evidence of which error is also assigned.

The New Mexico acts of 1876 (Laws 1876, c. 36) and 1915 were offered in evidence, the former reading as follows:

"566. *Property Subject to Mortgage—Growing Crops.* Section 1. Personal property of every description is hereby declared to be subject to mortgage, in accordance with the provisions of this chapter: Provided, That no authority is given to mortgage growing crops, until the same shall be matured and gathered; and any mortgage given on such growing crops is hereby declared to be null and void and of no effect." (See Code 1915.)

This remained the law until 1915, when the act of that year was adopted and was in effect when the mortgages in question were executed.

The act of 1915 (Acts 1915, c. 71) reads:

"Sec. 1. That personal property of every description, including growing crops, is hereby declared to be subject to mortgage in accordance with the provisions of this act." (The balance of act provides for registration.)

It will be observed, under the act of 1876, authority to mortgage crops was withheld until the same had matured and were gathered, and mortgages upon growing crops were expressly declared to be null and void, whereas the act of 1915 authorized growing crops to be mortgaged. The latter act thus conferred a right which had been theretofore denied, and made valid that which had previously been invalid, namely, mortgages upon growing crops.

Since the right conferred was to mortgage growing crops, the plain implication was that unplanted crops remained not subject to mortgage as aforetime, under the well-known legal maxim "expressio unius est exclusio alterius." 2 Lewis' Sutherland Statutory Construction (2d Ed.) § 491.

It is true, as appellants say, the maxim is but a rule of statutory construction to determine the legislative intent, when it is not otherwise manifest, but it "is sensible and useful in logic and law" (Matter of Connor's Will, 1 N. Y. St. Rep. 144), and a "very sound one" (Johnson v. Jordan, 2 Metc. [Mass.] 234, 37 Am. Dec. 85).

■ Under the law of 1876 mortgages upon unmatured and ungathered crops were invalid, and it is not to be presumed the Legislature by the act of 1915 intended to make any change in the then long-existing law and policy of the state with respect to crop mortgages, beyond what it expressly declared. 2 Lewis' Sutherland Statutory Construction (2d Ed.) § 499, at page 931. In our opinion it was not the intention of the Legislature in 1915 to completely reverse the long-established law and policy of the state with respect to crop mortgages, and confer the right to mortgage unplanted crops, whose existence is purely potential. Upon the contrary, we think the purpose was to change such law and policy to the extent only of permitting mortgages upon growing crops, and that mortgages upon unplanted crops should remain invalid as aforetime.

Upon this view it follows the mortgages declared upon by plaintiff and intervener were invalid, and no right of action exists against the defendants for the value of the cotton received by them and grown upon the McNary place. This renders it unnecessary to consider the question of notice discussed in the briefs.

■ For another reason we incline to the view that the judgment against the bank was proper. Brunson's mortgage to it was upon "all our cotton and all other crops raised or to be raised, grown or to be grown, planted or to be planted, or caused to be raised, grown, or planted, by us, or those in our employ during the year 1925" upon the McNary place.

The record shows that prior to January 30, 1925, Brunson had leased the place for the year 1925 to W. S. Russell, who, prior to such date, had taken possession of the place and was preparing same for cultivation. Under the written contract between Brunson and Russell, the latter was to "yield and pay as rental one-half of all the crops raised upon" the premises to be delivered at the gin. Thirty-four bales of the cotton received by defendants represented cotton raised by Russell, to which Brunson was entitled under the rental contract. Such cotton was not raised or grown by Brunson, or by any one in his employ, and we think it may be doubted if it can be considered as having been caused to be raised by him. We incline to the view that it should be considered as having been "caused to be raised, grown, or planted" by the tenant, Russell, and therefore the cotton received by defendants did not come within the description of the cotton mortgaged. In this connection see Blount v. Lewis (Tex. Civ. App.) 59 S. W. 293.

■ As to the intervener the judgment against it must be affirmed for this additional reason: Brunson went into possession of the land under a contract to purchase with intervener, whereby the latter executed a deed to Brunson, which was placed in escrow, to be delivered to Brunson when the latter paid a $2,500 note, the first of a series

of purchase-money notes executed by him. The mortgage asserted by intervener was given to secure the payment of this $2,500 note. About December, 1925, intervener withdrew the deed from its depository, resumed possession of the place, and sold it to another. This was prior to the filing of his intervention herein.

Under this state of facts, it is clear intervener had no right of action against Brunson upon the $2,500 purchase-money note, because he had rescinded his contract to convey to Brunson and placed it beyond his power to do so. Having no right of action upon the note against the maker, he could not recover any damages against one who had converted personalty mortgaged to secure the payment of such note.

Affirmed.